ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ2025-063A

| | | |
|---|---|---|
| **PEDRO MARRERO RUIZ**<br><br>Recurrente<br><br>v.<br><br>**RAYMOND QUIÑONES SANTIAGO**<br><br>Recurrido | TA2026RA00184 | **REVISIÓN** procedente del **Departamento de Asuntos del Consumidor**<br><br>Querella Núm.: **PON-2025-0006269**<br><br>Sobre:<br>Ley Núm. 5 del 23 de abril de 1973 (Ley Orgánica de DACo) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparecen ante nos, por derecho propio, el señor Pedro Marrero Ruiz (Sr. Marrero Ruiz o parte recurrente) y la señora Rosa D. Torres Rodríguez, mediante el presente recurso de revisión judicial. [1] Nos solicita que revoquemos una *Resolución* emitida y notificada por el Departamento de Asuntos del Consumidor (DACO) el 11 de febrero de 2026.[2] Mediante el referido dictamen, el DACO aprobó la transacción judicial estipulada por las partes.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

---

[1] La señora Rosa D. Torres Rodríguez no compareció en la Querella Núm. PON-2025-0006269 por lo cual carece de legitimación para solicitar revisión del dictamen. Por lo cual, procede la desestimación del recurso en cuanto a esta parte.
[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones (TA), Entrada Núm. 1, Apéndice Núm. 2. Notificada y archivada en autos el 15 de abril de 2026.

**I.**

Los hechos ante nuestra consideración se originan por una *Querella,* PON-2025-006269, instada por el Sr. Marrero Ruiz el 27 de agosto de 2025, contra el señor Raymond Quiñones Santiago (Sr. Quiñones Santiago o recurrido).[3] En síntesis, la parte recurrente alegó que el recurrido se comprometió a reparar su vehículo de motor por un precio previamente pactado, para cuya ejecución le adelantó la suma de $2,361.13, destinada a la adquisición de piezas. En su petición, añadió que durante el curso de la relación contractual el Sr. Quiñones Santiago requirió una cuantía adicional para completar el trabajo pactado y que, ante la negativa de la parte recurrente en satisfacer dicha suma adicional, el recurrido cesó la ejecución de los trabajos encomendados y, posteriormente, incumplió con las obligaciones asumidas. Por tal razón, solicitó al foro adjudicador que ordenara al Sr. Quiñones Santiago el reembolso de las cantidades desembolsadas, así como el pago de los honorarios de abogados.

Por su parte, el 18 de septiembre de 2025, el recurrido presentó su contestación a la querella.[4] En suma, adujo que, el acuerdo suscrito con la parte recurrente requería la adquisición de determinadas piezas a través de un proveedor externo, cuyo costo total ascendía a $3,941.53. Alegó que, para completar el pago de dichas piezas, restaba un balance pendiente de $1,641.53. Según expuso, al no contar con los fondos necesarios para cubrir la cuantía requerida, se vio imposibilitado de continuar con la ejecución de los trabajos acordados. En consecuencia, manifestó haber ofrecido a la parte recurrente la devolución de las piezas que ya habían sido adquiridas.

---

[3] *Íd.*, Entrada Núm. 3, Anejo 1 Notificación de Querella Núm. PON-2025-006269.
[4] *Íd.*, Entrada Núm. 3, Anejo 3 Contestación de Querella PON-2025-006269.

Superados varios asuntos procesales innecesarios pormenorizar, el 10 de febrero de 2026, se celebró la vista administrativa en la que compareció la parte recurrente junto con su representación legal. Por su parte, el recurrido se presentó de forma *pro se*.[5] Allí, la Oficial Examinadora hizo constar que las partes llegaron a un acuerdo transaccional fuera de la sala.[6]

Durante la vista, la representación legal del Sr. Marrero Ruiz vertió para récord la transacción judicial. Específicamente, informó que, en consideración al monto previamente satisfecho, el recurrido entregaría siete (7) piezas destinadas a la reparación del vehículo de motor, según identificadas en las facturas. Asimismo, indicó que, subsistía un remanente ascendente a $86.13, suma que el recurrido no estaría obligado a reembolsar. De igual forma, hizo constar que el Sr. Quiñones Santiago devolvería a la parte recurrente una pieza perteneciente a este que se encontraba bajo su posesión.[7] Presentada la oferta transaccional por la representación legal de la parte recurrente, la Oficial Examinadora procedió a formular las preguntas de rigor al Sr. Quiñones Santiago con el propósito de corroborar su capacidad para consentir y que su aceptación fue libre, voluntaria e informada de los términos de la transacción ofertada.[8]

Al así hacer, el 11 de febrero de 2026, el DACO notificó la *Resolución* en el caso de epígrafe mediante la cual acogió el contrato de transacción y archivó el caso.

El 19 de febrero de 2026, la parte recurrente presentó la renuncia de su representación legal, quien indicó que el Sr. Marrero Ruiz solicitó su renuncia debido a que este interesaba deshacer el acuerdo alcanzado. Además, el Recurrente pretendía que el Lic. Luis

---

[5] Regrabación de la Vista Administrativa celebrada el 10 de febrero de 2026, 0:56-1:00.
[6] *Íd.*, 1:00-1:10.
[7] *Íd.*, 4:05-6:51.
[8] *Íd.*, 6:50-7:56.

Guillermo León Rodríguez instara un recurso de reconsideración. Alcanzada la renuncia, la parte recurrente instó una petición de reconsideración por derecho propio.[9]

Irresoluta la moción de reconsideración instada por la parte recurrente, el 15 de abril de 2026, acudió ante nos por derecho propio y, aunque no expuso puntualmente los errores que le imputa al foro adjudicador, señaló lo siguiente:

1. Las partes apelantes expresaron en todo momento que no aceptaban la entrega de piezas, sino la devolución total del dinero depositado.
2. No se realizaron preguntas esenciales para validar si dicho acuerdo fue libre, voluntario y sin coacción.
3. Existió confusión, presión y falta de representación legal efectiva, lo cual quedó evidenciado posteriormente mediante la grabación oficial de la vista, la cual se solicitó el día 20 de febrero de 2026 y la misma está disponible de ser solicitada.

El 17 de abril de 2026, apercibimos al recurrido sobre el término reglamentario aplicable para comparecer en oposición y a su vez ordenamos al DACO a remitir copia certificada del expediente administrativo en el caso de epígrafe.[10]

En cumplimiento, el 22 de abril de 2026, la agencia administrativa elevó los autos del caso ante este foro revisor.[11]

Posteriormente, le ordenamos a la parte recurrente presentar la regrabación de la vista adjudicativa celebrada el 10 de febrero de 2026, así como completar el apéndice correspondiente a su alegato.[12]

Vencido el término concedido sin que el recurrido presentara su alegato en oposición ni la parte recurrente completara la presentación del apéndice, el recurso quedó sometido para nuestra consideración con los documentos que obran en autos, incluyendo la regrabación provista.

---

[9] SUMAC del TA, Entrada Núm. 3, Anejo 24 Moción de Renuncia de Representación Profesional.
[10] *Íd.*, Entrada Núm. 2.
[11] *Íd.*, Entrada Núm. 3.
[12] *Íd.*, Entrada Núm. 5.

## II.

## A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003",* Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos deben concederles deferencia a las decisiones administrativas, siempre y cuando se basen en evidencia sustancial que obre en el expediente administrativo. *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR __ (2025). Debido a la experiencia y el conocimiento especializado que poseen las agencias, los foros apelativos tomarán en consideración que las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarlas. *Katiria's Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-394 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Katiria's Café v. Mun. de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable. *Katiria's Café v. Mun. de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). De igual modo, al revisar

las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas, supra*, págs. 114-115. La evidencia sustancial es " 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión' ". *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 266 (2007) (*citando a Hernández, Álvarez v. Centro Unido, supra*, pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR __ (2025). Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros*, 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado). En ese sentido, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia. *Vázquez v. Consejo de Titulares,* supra.

**B.**

La transacción es un contrato por el cual las partes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen

fin al que había comenzado. Artículo 1497 del Código Civil de Puerto Rico de 2020, 31 L.P.R.A. sec. 10641. Los elementos constitutivos de un contrato de transacción son: (1) que exista una relación jurídica incierta y litigiosa; (2) que las partes contratantes tengan la intención de componer el litigio y sustituir la relación dudosa por una cierta y constatable y (3) que las partes se otorguen concesiones recíprocas. *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 156 (2021).

Existen dos clases de contratos de transacción: el judicial y el extrajudicial. Si antes de comenzar un pleito, las partes pactan eliminar la controversia mediante un acuerdo, nos encontramos ante un contrato de transacción extrajudicial. También, estando aún el pleito pendiente, si las partes acuerdan una transacción sin la intervención del tribunal, existe un contrato de transacción extrajudicial. *Rodriguez v. Hosp.,* 186 DPR 889, 904 (2012). En ese caso, bastará un mero aviso de desistimiento para poner fin al pleito. En cambio, si la controversia degenera en un pleito, y luego de este haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial en curso, estamos ante un contrato de transacción judicial que tiene el efecto de terminar el pleito. *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 DPR 860, 870-871 (1995).

Agréguese que, como todo contrato, la transacción debe contar con los requisitos esenciales de su perfeccionamiento mediante la manifestación del consentimiento sobre el objeto y la causa, y ello, conforme al Artículo 1237 del Código Civil de 2020, *supra*, sec. 9771. En términos del contrato de transacción, existe el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes -la polémica judicial o extrajudicial pues sin ella no puede existir la transacción; y su causa consiste en la eliminación de la controversia mediante

recíprocas concesiones. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 871.

Valga indicar que, como todo contrato consensual, puede indicarse que el contrato de transacción se perfecciona por la mera concurrencia del consentimiento, con su anuencia por escrito debidamente firmado por las partes o en resolución o sentencia dictada por el foro adjudicador. Artículos 1230, 1237 y 1503 del Código Civil de 2020, *supra*, secs. 9751, 9771 y 10647. Por su parte, el consentimiento, como requisito esencial para acreditar la existencia de un contrato, se manifiesta por el concurso de la oferta y la aceptación de la oferta. Esto es, la aceptación de la oferta es el procedimiento normal para el perfeccionamiento de un contrato, y por la concurrencia de tales elementos, se tiene por configurado el consentimiento. Artículo 1238 del Código Civil de 2020, *supra*, sec. 9772; *Prods. Tommy Muñiz, Inc. v. COPAN*, 113 DPR 517, 521–522 (1982).

Más aún, cabe destacarse que una vez acordada la transacción judicial y aprobada por el tribunal, tiene para las partes la autoridad de la cosa juzgada. Artículo 1500 del Código Civil de 2020, *supra*, sec. 10644; *Igaravidez v. Ricci*, 147 DPR 1, 6 (1998). Cuando una parte no cumple con lo estipulado en una transacción judicial, se le puede solicitar al tribunal que lo convenido se lleve a efecto y ejecute, pues lo acordado es vinculante a las partes, según sus alcances. *Neca Mortg. Corp. v. A & W Dev. S.E.*, supra, pág. 872.

### III.

En el caso de marras, la controversia principal del asunto ante nuestra consideración gira en torno a un contrato de transacción extrajudicial, negociado y perfeccionado por las partes, y posteriormente presentado ante la Oficial Examinadora del DACO para su aprobación. En efecto, el DACO adoptó y aprobó todos los

términos y condiciones contenidos en la transacción judicial alcanzada por las partes, dictando *Resolución* de conformidad el 11 de febrero de 2026.

No obstante, una vez notificada la determinación, la parte recurrente hizo constar su insatisfacción con la transacción alcanzada por alegados vicios en el consentimiento. Pues indica que desde el comienzo su intención era recuperar la totalidad del dinero líquido; expresa que se sintió obligado por su representante legal a continuar con la transacción y señala que la Oficial Examinadora no le realizó las preguntas de rigor para certificar que el acuerdo fuese libre y voluntario.

En el caso de autos, surge de la regrabación de la vista administrativa, celebrada el 10 de febrero de 2026, que la parte recurrente compareció mediante su representación legal y este último presentó una oferta en la que detalló los términos y condiciones de la transacción. Mostró documentación sobre las facturas, la cuantía solicitada en la querella, el equipo adquirido por el recurrido y su valor. Una vez presentada la oferta, en presencia del Sr. Marrero Ruiz, la Oficial Examinadora le preguntó al recurrido, quien compareció por derecho propio, sobre su capacidad para consentir. Superado lo anterior, el recurrido aceptó la oferta. Ello provocó que el DACO aceptara la misma y emitiera una determinación por escrito a esos efectos.

Según esbozamos en el acápite anterior, existe consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación. Artículo 1238 del Código Civil de 2020, *supra.* Es decir, una vez el oferente realiza la oferta, la cual dispone de los elementos constituyentes de un contrato, se entiende que ha prestado su consentimiento. Por su parte, una vez el oferente consiente, concurre el consentimiento de ambas partes y como resultado, queda perfeccionado el contrato.

En ese sentido, no hay controversia real sobre el consentimiento prestado por la parte recurrente, quien fue en primera instancia quien realizó la oferta para dar fin al litigio. Tampoco nos ha demostrado circunstancia alguna en la que su representación legal haya incurrido en actos perjudiciales para brindar su consentimiento, más allá de meras alegaciones infundadas. A esos efectos, surge claramente de la regrabación de los procedimientos llevados a cabo el 11 de febrero de 2026, que el representante legal del Sr. Marrero Ruiz le realizó las siguientes preguntas:

Lic. Luis Guillermo León Rodríguez Diga el nombre suyo para efectos del registro.

Sr. Marrero Ruiz: Pedro Marrero Ruiz

Lic. Luis Guillermo León Rodríguez Pedro Marrero. ¿Estás de acuerdo?

Sr. Marrero Ruiz: Si

Lic. Luis Guillermo León Rodríguez Estas hoy bajo efectos de bebidas embriagantes

Sr. Marrero Ruiz: [lo interrumpe] de nada.

Lic. Luis Guillermo León Rodríguez: ni [...] medicamentos narcóticos que te impidan bien las cosas

Sr. Marrero Ruiz: No

Lic. Luis Guillermo León Rodríguez: Está bien.[13]

Como vimos, tal negocio jurídico aconteció entre las partes quienes estaban jurídicamente capacitadas para contratar, contratación que no revela vicio en el consentimiento. Por su parte, el foro adjudicador realizó su función de acoger dicha transacción luego de habérsele presentado un contrato de transacción que cumple cabalmente con los elementos requeridos en nuestro ordenamiento. A saber, un contrato mediante el cual las partes

---

[13] Regrabación de la Vista Administrativa celebrada el 10 de febrero de 2026, 11:20-11:44.

ponen fin a un litigio o a su incertidumbre sobre una relación jurídica.

Por lo cual, colegimos que el DACO no cometió el error señalado.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones